UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

JOHN WILLIAMS, )
    Plaintiff, )
)
v. ) Case No. 04-1013
)
LEO ZAPPA, Jr. and )
MICHAEL J. TORCHIA, )
)
    Defendants. )

## O R D E R

This matter is now before the Court on Defendants' Motion for Summary Judgment. For the reasons set forth below, Defendants' Motion for Summary Judgment [#15] is GRANTED.

### BACKGROUND

Plaintiff, John Williams ("Williams"), was a Supervisor in the Adult Probation Department of Sangamon County. Williams began his employment in 1985 as an Adult Probation Officer and was promoted in 1998 to the position of Adult Probation Supervisor. In his position as supervisor, Williams was directly responsible for supervising probation officers, managing probationers, and conducting pre-sentencing investigations. Williams was also responsible for managing the probation officers assigned to the specialized sex offender program. Williams held this supervisor position until he was terminated on July 1, 2002.

At all relevant times, Defendant Leo Zappa ("Zappa") was employed by Sangamon County as the Chief Judge of the Seventh Judicial Circuit of Illinois. As Chief Judge, Zappa

had general administrative and supervisory authority over the Director of the Adult Probation Department and his subordinates. Defendant Michael J. Torchia ("Torchia") was employed by Sangamon County as Director of Sangamon County's Adult Probation Department and supervised all of the employees in the Adult Probation Department.

Williams alleges that Defendants violated his First Amendment rights when they retaliated against him for: (1) supporting the unionization of line employees, (2) writing letters to Judge John Mehlick and Judge Steven Nardulli criticizing recent sentences handed down by them to individual sex offenders, (3) writing an electronic mail message in which Williams attempted to persuade Torchia to change an earlier decision regarding the future operation of the sex offenders unit of the probation department, and (4) including comments and opinions about department management in a Public Service Employment proposal. Williams argues that the claimed retaliation took the form of a written reprimand, a three-day suspension, and termination.

As a result of Defendants' actions, Williams filed a Complaint in this Court under 28 U.S.C. § 1983 alleging that Defendants violated his First Amendment rights because Williams was speaking out on issues of public concern. Defendants filed a Motion for Summary Judgment arguing that Williams' speech was not a matter of public concern, that Williams is not entitled to protection for his speech, and that even if Williams' speech was protected, Defendants are entitled to qualified immunity. Williams filed a response to Defendants' Motion for Summary Judgment.

In Defendants' Memorandum of Law in Support of Motion for Summary Judgment, Defendants deny that they retaliated against Williams because he supported the unionization of line personnel. In support of this, Defendants point to the fact that Williams

admits that he cannot provide any evidence that Defendant Zappa knew that Williams supported unionization and that Williams admitted that Defendant Torchia also supported unionization. Accordingly, Defendants argue that Williams cannot claim that Defendants retaliated against him based on his support of unionization. In his Memorandum in Opposition to Defendants' Motion for Summary Judgment, Williams does not address this issue. Therefore, he has conceded the issue and the Court will address the three remaining claims.

## STANDARD OF REVIEW

A motion for summary judgment will be granted where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party has the responsibility of informing the Court of portions of the record or affidavits that demonstrate the absence of a triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 2552 (1986). The moving party may meet its burden of showing an absence of material facts by demonstrating "that there is an absence of evidence to support the non-moving party's case." Id. at 2553. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 2513 (1986); Cain v. Lane, 857 F.2d 1139, 1142 (7th Cir. 1988).

If the moving party meets its burden, the non-moving party then has the burden of presenting specific facts to show that there is a genuine issue of material fact. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S.Ct. 1348, 1355-56 (1986). Federal Rule of Civil Procedure 56(e) requires the non-moving party to go beyond the pleadings and produce evidence of a genuine issue for trial. Celotex Corp., 106

S.Ct. at 2553.  This Court must then determine whether there is a need for trial— whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may be reasonably resolved in favor of either party. Anderson, 106 S.Ct. at 2511; Hedberg v. Indiana Bell Tel. Co., 47 F.3d 928, 931 (7th Cir. 1995).

## DISCUSSION

Defendants claim that they are entitled to summary judgment because Williams' speech was not protected speech.  Additionally, Defendants argue that even if the Court finds that Williams engaged in protected speech, Defendants are entitled to qualified immunity.

**A.     Williams' Retaliation Claim**

Williams claims that Defendants violated his First Amendment right to free speech when they disciplined him for expressing his opinion about various issues arising out of the operation of the Probation Department.  Individuals do not relinquish their First Amendment rights to free speech simply because they work for the government.  Cygan v. Wisconsin Dept. of Corrections, 388 F.3d 1092, 1098 (7th Cir. 2004).  Nevertheless, the government as an employer has an interest in conducting its affairs as efficiently and effectively as possible.  *Id.*  As a consequence, "public employees do not have the unfettered right to express themselves on matters related to their official responsibilities, and courts must give due weight to the government's interest in efficient employment decisionmaking when evaluating First Amendment retaliation claims." *Id.* (citing Waters v. Churchill, 511 U.S. 661, 675 (1994)).

The Court applies a three-step analysis to Williams' retaliation claim, asking: (1) whether the speech was constitutionally protected, (2) whether the Defendants' actions against Williams were motivated by the constitutionally protected speech, and (3) whether the Defendants can show that they would have taken the same action against Williams if he had not engaged in such speech. Lifton v. Bd. of Ed. of the City of Chicago, 416 F.3d 571, 575 (7th Cir. 2005). The first two inquiries make up the Plaintiff's prima facie retaliation case, and the third allows an employer to rebut that case by showing that it would have taken the adverse employment action regardless of the plaintiff's protected speech. Id. If the employer carries its burden in the third step of the analysis, then the burden shifts back to the plaintiff to show that the proffered reasons for the employment action were pretextual. Id.

In the instant case, there is no dispute that Defendants' actions in disciplining Williams were the result of Williams' activities and Defendants do not argue that they would have disciplined Williams even if he had not engaged in such activity. Therefore, the only issue with respect to Williams' retaliation claim is whether Williams' speech was constitutionally protected.

In determining whether speech is considered protected speech under the First Amendment, courts apply the two-step Connick-Pickering test. Schad v. Jones, 415 F.3d 671, 674 (7th Cir. 2005) (citing Connick v. Myers, 461 U.S. 138 (1983)); Pickering v. Bd. of Ed. Of Township High Sch. Dist., 205, 391 U.S. 563 (1968). Under Connick, the Court first determines whether the employee spoke "as a citizen upon matters of public concern." Connick, 461 U.S. at 147. Second, under *Pickering*, the Court balances "the interests of [the employee], as a citizen, in commenting upon matters of public concern and the interest

of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." Pickering, 391 U.S. at 568.

**A.    Was Williams speaking on a matter of public concern?**

In the instant case, the parties disagree as to whether Williams' speech involved a matter of public concern. When determining whether speech addresses a matter of public concern, the Court considers "the content, form, and context of a given statement, as revealed by the whole record." Cygan, 388 F.3d at 1099 (citing Connick, 461 U.S. at 147–48). Of those three factors, content is the most important. Id. The Court may also consider the employee's choice of forum and motivation for speaking. Id. Ultimately, the Court must determine whether the speech is most accurately characterized as an employee grievance, or as a matter of political, social, or other concern to the community. Id. The Court reviews each of Williams' instances of speech individually to determine if they constitute speech on a matter of public concern.

**1.    The letters to Judge John Mehlick and Judge Steven Nardulli**

Williams alleges that Defendants retaliated against him for writing letters to two Circuit Judges criticizing the sentences they issued in specific criminal cases. Specifically, Williams claims that the letters were letters regarding a matter of public concern. In each letter, Williams questioned the manner in which how the judge to whom the letter was addressed imposed sentence on a particular defendant and expressed concern about the fact that certain probation restrictions were not imposed on the particular defendant. Williams argues that these letters involve matters of public concern because members of the public have an interest in seeing that sex offenders are carefully monitored. Although

the letters are similar, they are different in one crucial respect and therefore the Court will address them separately.

### a. Letter to Judge Nardulli

Although ensuring that sex offenders are carefully monitored while on probation is undoubtedly an issue that concerns the public, the content, form, and context of Williams' letter to Judge Nardulli indicates that Williams wrote this letter to express his disagreement with a particular sentence that the Judge gave to a defendant. In the letter, Williams discussed the individual defendant's conduct, provided details regarding the specialized sex offender program and the premises upon which the sex offender program operated, and informed the Judge that the sentence impaired the Probation Department's ability to do its job. Williams then recommended that Judge Nardulli follow a "best practices" approach to managing sex offenders and included an article regarding "best practices" for handing sex offenders. Finally, Williams ended by stating that he hoped that the letter represented the beginning of a dialogue wherein they could mutually learn from one another regarding the best course of action for handling sex offending probationers "given [their] similar missions."

Although Williams contends that this letter is speech on a matter of public concern because the public has an interest in seeing that sex offenders are given proper sentences, this letter is not speech on a matter of public concern. As the Seventh Circuit has noted:

> While speech addressing matters of public protection and public safety are matters of public concern, we have cautioned that if every facet of internal operations within a governmental agency were of public concern, and therefore any employee complaint or comment upon such matters constitutionally protected, no escape from judicial oversight of every governmental activity down to the smallest minutia would be possible.

Kuchenreuther v. City of Milwaukee, 221 F.3d 967, 974–75(7th Cir. 2000). Here, Williams' letter to Judge Nardulli is not speech on a matter of public concern because Williams' letter merely expressed his opinion regarding the Judge's decision and identifies how this decision affects the internal operation of the probation department. Specifically, Williams wrote the letter to "respectfully register [his] concern with the disposition" of a particular case." In most cases, Judges have considerable discretion when deciding which sentence to impose upon a defendant and not every comment questioning those decisions amounts to speech on a matter of public concern. Accordingly, Williams' speech in his letter to Judge Nardulli is not Constitutionally protected.

> **b.   Letter to Judge Mehlick**

Williams' letter to Judge Mehlick includes many of the same items as his letter to Judge Nardulli. However, the two letters are different in one significant respect. Unlike the letter to Judge Nardulli, Williams' letter to Judge Mehlick indicates that Judge Mehlick failed to impose statutorily required conditions on a defendant being sentenced to probation. Specifically, Williams states:

> However, I am behooved to register a number of concerns about this case. The first has to do with the absence of the statutorily required conditions (i.e. sex offender registration, STD, including HIV testing, and DNA coding). The second is the absence of a reporting condition, with frequency left to the discretion of the probation officers working in the specialized sex offender unit.

The statement indicating that Judge Mehlick failed to impose statutorily required conditions is speech on a matter of public concern because Williams' speech identifies wrongful action on the part of a governmental employee. See Spiegla v. Hull, 371 F.3d 928, 937 (7th Cir. 2004) (finding that a prison employee's speech qualified as speech on a matter of public concern because the employee reported suspicions of unlawful behavior of other

employees). The Seventh Circuit has consistently held that "speech alleging government corruption and malfeasance is of public concern." Id. There is certainly no suggestion of corruption or malfeasance on the part of the Judge, nonetheless, Judge Mehlick's alleged failure to impose statutorily required conditions on a probationer would be a violation of the law and could fairly be characterized as nonfeasance. Accordingly, that quoted portion of Williams' letter identifying this allegedly unlawful action qualifies as speech on a matter of public concern.

However, even though Williams' letter to Judge Mehlick involves a matter of public concern, the Defendants did not actionably retaliate against Williams because they did not discipline him for sending the letter to Judge Mehlick. Although Defendants concede that they orally counseled Williams for the tone that he used in the letters to the Judges, Williams admits that he was not disciplined for sending the letters. In an affidavit dated August 4, 2005, Williams states "[t]hat after I sent the letters I was not disciplined for sending them." Accordingly, as Williams admits that Defendants did not discipline him for sending the letters, Defendants could not have retaliated against him on that basis.

2. **November 2001 E-mail Message**

Williams next contends that his e-mail dated November 1, 2001, to Defendant Torchia was speech regarding a matter of public concern. Williams' e-mail consisted of three single spaced typed pages, which Williams allegedly sent to encourage Torchia to change a decision that he had made regarding work assignments within the sex offender unit. Previously, the two line probation officers in the sex offender unit had been responsible for conducting both field work and investigations. Torchia made the decision to split the two functions and assign one probation officer to field work and one to

investigations. After he announced his plan to separate the two positions, Williams asked if he could make a presentation to the management team addressing the issue. Williams made a presentation to the management team on October 3, 2001, and outlined why he opposed splitting the sex offender responsibilities. Williams claims that he disagreed with Torchia's plan because the plan was not sound based upon available data and because Williams believed that the department could do a better job of managing sex offenders by not splitting up the positions. Williams further alleges that he would not personally benefit from a decision either way and that his ultimate concern was for the safety of the citizens of Sangamon County. In contrast, Defendants argue that Williams' e-mail was a personal grievance because Williams disagreed with Torchia's decision regarding the allocation of resources in the sex offender unit.

The wording and distribution of the e-mail establish that Williams was not acting out of concern for public safety when he wrote the e-mail. Specifically, the tone (anger) and wording of the e-mail, coupled with the fact that Williams sent the e-mail, not only to Defendant Torchia and Defendant Zappa, individuals who have the authority to bring about change, but also to line probation officers, indicates Williams wrote this e-mail to air a personal grievance that he had with Defendant Torchia. In his e-mail, Williams states:

> I've mulled over your response to my contention that the two Sex Offender (SO) officers should continue to do both field and investigation work during the 4th year of the grant program, while transitioning themselves to the field by training a full-time investigation officer(s) to perform both investigation reports and intakes. I recall that just to get a chance to make my case at our management meeting on October 3, 2001, I had to plea twice, first one-on-one with you and, then, with the rest of the management team. Since then you have rejected my recommendation by opting to split Don and Jim between field and investigation operations (communicated in your e-mail below). Now I feel I'm at a point where I owe, at least myself, a written statement that lays out my case for the record. (I think the exercise could

> help soothe my soul because I see serious problems in carrying out our mission with the course of action you have set).
>
> I appreciate the clear communication below in which you rejected my proposal. (Sometimes the lack of a response is more frustrating than even an undesired response.) However, I'm less appreciative of the absence of not only a rationale or counterarguments, backed with data, but also a clear and compelling communication of why. None has been articulated to me.
>
> This writing perhaps represents my last effort to not only get you to seriously rethink your decision but change your mind on how to proceed with the sex offender program in the coming year in the context of the department's reorganization.

Williams goes on to discuss how Torchia's plan will result in one probation officer being overworked while the other officer is under-worked and discusses the positive results that the sex offender unit was having with both probation officers doing field work and investigations. After repeatedly questioning the efficiency of splitting the two sex offender responsibilities, Williams added:

> I can't help but wonder what drove your decision to split apart the SO officers. It's not statistics or reasonable arguments grounded in the realities I presented above. To repeat you have articulated none. I can't help but speculate that your decision stems from a way of thinking that's force feeding the entire department into a generic mold that indiscriminately slices everything into either the field or investigation operations without proper regard to exceptions. Well, the SO program is the exception and I'm trying my damnedest to grab your attention to act accordingly.
>
> * * *
>
> Now that I've aired my concerns, let me make it abundantly clear that my disappointment with your decisions in this matter in no way sidetracks my efforts to do my share of work in pushing the department forward to do a better job at supervising probationers while simultaneously protecting the citizens of this county. I strongly believe what I have done here, as I have previously done and will continue to do, is offer a thoughtful piece of constructive criticism–a necessary and vital exercise for any member of the management team. I also believe it represents a testament of my commitment to this department.

> Just keep in mind that in terms of the big picture, what we have here is a difference of thought as to how to proceed with one of the department's specialized programs in the context of our reorganization efforts. It's not a difference regarding other department activities and, certainly, it is not a difference regarding our common goals.

In reviewing the content of this letter, it is impossible to find that this is anything other than a letter regarding the internal operations of the Probation Department. Williams writes as a member of the management team offering "constructive criticism" to another member based on a decision that his supervisor made. Further, Williams states that he is writing this e-mail to soothe his own soul. He does say that he is writing this e-mail because he is concerned for the safety of the public. Additionally, Williams' statements imply that Williams and Torchia share the common goal of protecting the public but that Williams was primarily concerned in the e-mail with the internal operation of the department. At most, Williams' e-mail is an attempt by Williams to air his personal disagreement with Torchia's reorganization plan. Accordingly, Williams' e-mail does not touch upon speech relating to a public concern and therefore it is not Constitutionally protected.

### 3. Public Service Employment Proposal

Williams' final argument is that Defendants retaliated against him because he included comments and personal opinions about management in an internal draft of a Public Service Employment Proposal ("PSE proposal") that Williams was asked to help draft with a line probation officer. Williams argues that the development of the PSE proposal is speech concerning a matter of public concern because the purpose of the program was to expand an existing program that offers criminals sentencing alternatives to fines and jail time and that this expansion would benefit the people of Sangamon County. Additionally, Williams argues that this speech was speech concerning a matter of

public concern in that his opinions were included in the proposal in an effort to highlight mismanagement by Defendant Torchia and other members of management. Specifically, the proposal states "[i]t should be noted all of the principals never met together and instructions (verbal) for this proposal were minimal and vague." (PSE Proposal, Rev. June 7, 2002.) The proposal also states:

> If the PSE program is to evolve into a more intense probation operation, it would be remiss not to address the widespread misconception that the [Chief Resource Officer's][1] work ethic is questionable despite the statistical substantiation of the growth of the [program's] activities . . . there is a lingering distrust that the [Chief Resource Officer] does not do his fair share of the work. This skepticism among management will have to be overcome in order to free up the [Chief Resource Officer's] time to 'grow' the PSE program.

Id.

Williams claims that these statements are speech on a matter of public concern because his motivation in including them in the PSE proposal was to highlight the fact that Defendants were not properly managing the department and the PSE program. Although exposing wrongdoing within a public entity may be a matter of public concern, simply because something might be interesting to the public does not make it a matter of public concern. See Colburn v. Trustees of Indiana University, 973 F.2d 581, 586 (7th Cir. 1992), In Colburn, the Seventh Circuit ruled that two faculty members were not speaking on a matter of public concern when they sent requests to a university official asking the university to conduct external evaluations of faculty members because the plaintiffs believed that internal evaluations were being made based on personal biases. Id. The

---

[1] For reference, the line employee who drafted the PSE proposal with Williams was also the Chief Resource Officer, the individual responsible for running the PSE program on a day-to-day basis

- 13 -

court noted that even though the public "would be displeased to learn that faculty members at a public university were evaluating their colleagues based on personal biases" nonetheless, "the fact that the issue could be 'interesting' to the community does not make it an issue of public concern." Id.  Additionally, the court noted that despite the fact that plaintiffs' statements revealed individual biases within the department's review process, the plaintiffs did not attempt to "expose some malfeasance that would directly affect the community at large." Id.  Similarly, in the instant case, the content of Williams' statements do not identify malfeasance that affects the community at large.  At most, this document internally affected the staff of the Sangamon County Probation Department.  Even if Defendants failed to hold a meeting, gave vague instructions, or had less than full confidence in the ability of the Chief Resource Officer, contentions that Defendants dispute, these actions do not rise to the level of malfeasance that affects the community at large. Additionally, in reviewing the form and content of Williams' "speech", it is clear that this is not speech on a matter of public concern.  The PSE proposal was an internal draft of a proposed document regarding the potential expansion of a departmental program. Moreover, the context in which Williams wrote this proposal indicates that Williams was not motivated by a desire to point out malfeasance to the public.  Williams wrote the PSE proposal after he and Defendant Torchia disagreed about the organization of the probation department, after Torchia disregarded Williams' statements and reorganized the department according to his plan, and after Torchia had disciplined him more than once for his unprofessional conduct.  Therefore, because Williams' statements were included in an internal document, in the context of an on-going dispute with Torchia, and did not address anything other than the internal operating procedures of the probation department,

Williams' speech is not speech on a matter of public concern and is not entitled to Constitutional protection.

## **CONCLUSION**

For the reasons set forth above, Defendants' Motion for Summary Judgment [#15] is GRANTED.  Accordingly, it is not necessary for the Court to address Defendants' claim for qualified immunity.

ENTERED this 8th day of December, 2005.

s/ Michael M. Mihm
Michael M. Mihm
United States District Judge
